IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT L. SPENCE; PATSY A. WARREN; BRENDA J. LOWRANCE; RICHARD D. DEVANEY; individually and on behalf of all other persons similarly situated, § § § § § | | |
| Plaintiffs, § | CASE NO.: 3:10-cv-0142 | |
| vs. § | **TRIAL BY JURY REQUESTED** (Collective Action) | |
| IRVING HOLDINGS, INC., § § § | | |
| Defendant. § | | |

## FIRST AMENDED COMPLAINT AND COLLECTIVE ACTION COMPLAINT

COME NOW Plaintiffs ROBERT L. SPENCE, PATSY A. WARREN, BRENDA J. LOWRANCE, and RICHARD D. DEVANEY ("Plaintiffs"), individually and on behalf of all other persons similarly situated, and file this, their First Amended Complaint and Collective Action Complaint against Defendant IRVING HOLDINGS, INC. (hereinafter referred to as "Defendant IHI"), and in support thereof would respectfully show the Court as follows:

### NATURE OF THE ACTION

1.  Plaintiffs bring a collective action and allege on behalf of themselves and other similarly situated current and former employees of Defendant who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are (i) entitled to unpaid wages for hours worked, (ii) entitled to unpaid wages for overtime work for which they did not receive overtime premium pay, as required by law, (iii) entitled to restitution for amounts improperly withheld, and (iv) entitled to liquidated damages from Defendants pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*

## PARTIES

2. Upon information and belief, Defendant IRVING HOLDINGS, INC. is a corporation organized and existing under the laws of the State of Texas with its principal place of business in Dallas County, Texas. Therefore, for purposes of the definition of an employer under § 3(d) of the FLSA, 29 U.S.C. 203(d), Irving Holdings, Inc. is the employer of Plaintiffs and all members of the proposed Class set forth below.

3. At all material times relevant to this action, Defendant Irving Holdings, Inc. was qualified to, and did, transact business in the State of Texas. At all times relevant herein, Defendant was an employer engaged in commerce under the FLSA, 29 U.S.C. 201, *et seq*.

4. Plaintiff ROBERT L. SPENCE is a resident of Dallas County, Texas and was, at all relevant times complained of, employed as a Medicaid Transportation Driver by Defendant in the Texas counties of Dallas, Tarrant, Denton, Collin and/or Johnson, and was not an employee over whom the Secretary of Transportation has or had the power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935.

5. Plaintiff PATSY A. WARREN is a resident of Tarrant County, Texas and was, at all relevant times complained of, employed as a Medicaid Transportation Driver by Defendant in the Texas counties of Dallas, Tarrant, Denton, Collin and/or Johnson, and was not an employee over whom the Secretary of Transportation has or had the power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935.

6. Plaintiff BRENDA J. LOWRANCE is a resident of Tarrant County, Texas and was, at all relevant times complained of, employed as a Medicaid Transportation Driver by

Defendant in the Texas counties of Dallas, Tarrant, Denton, Collin and/or Johnson, and was not an employee over whom the Secretary of Transportation has or had the power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935.

7.   Plaintiff RICHARD D. DEVANEY is a resident of Tarrant County, Texas and was, at all relevant times complained of, employed as a Medicaid Transportation Driver by Defendant in the Texas counties of Dallas, Tarrant, Denton, Collin and/or Johnson, and was not an employee over whom the Secretary of Transportation has or had the power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act of 1935.

## JURISDICTION AND VENUE

8.   This Court has original jurisdiction over the federal wage claims herein pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* (hereinafter "FLSA"). Jurisdiction of the Court is invoked pursuant to FLSA, 29 U.S.C. § 216(b), which states "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," and invoked pursuant to 29 U.S.C. § 1331. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 29 U.S.C. § 1367.

9.   Venue is proper with this Court under 28 U.S.C. § 1391(b) and (c) because a substantial part of the unlawful actions complained of took place within this judicial district and the State of Texas. Moreover, both Plaintiffs and Defendant reside in the Northern District of Texas.

## INTRODUCTION

10. This is a class and collective action brought on behalf of all persons who worked in the State of Texas as Medicaid transportation drivers for any portion of time for the Defendant within the last three (3) years, as well as those Medicaid transportation drivers who continue to be employed as such for the Defendant from the date of the filing of this Complaint.

11. Medicaid transportation drivers operate passenger vehicles which seat five to seven people, including the driver, and weigh less than 10,000 gross pounds. They are not required to have a commercial driver's license ("CDL") to operate these passenger vehicles because they do not meet the passenger minimum for Department of Transportation regulations.

12. While for-hire taxicab drivers are exempt from the minimum wage and overtime compensation provisions of the FLSA, Medicaid transportation drivers are not. *Powell v. Carey Int'l, Inc.,* 483 F.Supp.2d 1168, 1172-73 (S.D. Fla. 2007); *Powell v. Carey Int'l, Inc.,* 490 F.Supp.2d 1202, 1213 (S.D. Fla. 2006)(Defendants are not exempt as taxicab operators when they have contract arrangements with local hotels, corporate clients, and destination management companies, and utilize large cars that are not traditionally recognized as taxicabs.); *Airlines Transp. V. Tobin,* 198 F.2d 249, 250 (4th Cir. 1952); *Wirtz v. Cincinnati Newport and Covington Transp. Co.,* 375 F.2d 513, 515 (6th Cir. 1967).

13. Pursuant to a contract arrangement between Defendant and the Texas Department of Transportation ("TXDOT"), Defendant employs, and has employed in the State of Texas, on a full time basis, numerous Medicaid transportation drivers, including the Plaintiffs and members of the proposed Class.

14. Defendant employs Medicaid transportation drivers, all of whom, at Defendant's direction and control, perform non-emergency transportation services for Medicaid recipients to medical appointments on a scheduled-service basis.

15. Because Plaintiffs and proposed Class are performing work, including driving, unrelated to Defendant's operation of a for-hire taxicab company, they are not exempt from overtime under Section 13(b)(17) of the FLSA. *See* United States Department Field Operations Handbook, § 24h03 ("Examples of <u>nonexempt</u> work by "any driver" for purposes of Sec 13(b)(17) are: . . . (4) Performing work, including driving, in connection with other business operations of the employer (i.e., not his taxicab operations), such as operation of an airport limousine service, a pick-up and delivery service, or a moving and storage service.").

16. In addition, Plaintiffs and the proposed Class are not exempt from overtime compensation under Section 13(b)(1) of the FLSA, because under recent amendments to the Motor Carrier Act, the Secretary of Transportation does not have the power to establish qualifications and maximum hours of service pursuant to the provisions of Section 204 of the Motor Carrier Act of 1935 for these Plaintiffs and the proposed Class. On August 10, 2005, Congress enacted Section 4142 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users ("SAFETEA-LU"). Pub. L. No. 109-59, 119 Stat. 1144 (2005). SAFETEA-LU amended 49 U.S.C. § 13102 defined a motor carrier as "a person providing commercial motor vehicle (as defined in [49 U.S.C.] § 31132) transportation for compensation." *Id.* (emphasis added). In turn, a commercial motor vehicle was defined as: "[A] self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle –(A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds, whichever is greater; (B) is designed or used to transport more than 8 passengers

(including the driver) for compensation; (C) is used in transporting material found by the Secretary of Transportation to be hazardous under Section 5103 of this title [49 U.S.C. § 5103] and transported in a quantity requiring placarding under regulations prescribed by the Secretary under [49 U.S.C.] Section 5103."

17. On June 6, 2008, Congress passed the SAFETEA-LU Technical Corrections Act of 2008. Pub. L. No. 110-244, 122 Stat. 1572 (2008) ("Technical Corrections Act"), which defines the phrase "covered employee" in § 306(c) of SAFETEA-LU as an individual: "(1) who is employed by a motor carrier or motor private carrier (as such terms are defined by section 13109 of title 49, United States Code, as amended by section 305); (2) whose work, in whole or in part, is defined – (A) as that of a driver, driver's helper, loader, or mechanic; and (B) as affecting the safety of operation of motor vehicles weighing 10,0000 pounds or less in transportation on public highways in interstate or foreign commerce, except vehicles – (i) designed or used to transport more than 8 passengers (including the driver) for compensation; (ii) designed or used to transport more than 15 passengers (including the driver) and not used to transport passengers for compensation; and (iii) used in transporting material found by the Secretary of Transportation to be hazardous under section 5103 of title 49, United States Code, and transported in a quantity requiring placarding under regulations prescribed by the Secretary under section 5103 of title 49, United States Code; and (3) who perform duties on motor vehicles weighing 10,000 pounds or less."

18. Defendant misclassifies its Medicaid transportation drivers, including Plaintiffs and members of the proposed Class, as "independent contractors," thereby violating the FLSA, failing to pay the required employer federal taxes, and/or requiring its Medicaid transportation drivers to incur unnecessary expenses which should have been paid by Defendant.

## FLSA COLLECTIVE ACTION ALLEGATIONS

19. Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of:

> all persons who presently work, or formerly worked, in the State of Texas as Medicaid transportation drivers for Defendant IHI during the longest period of time permitted by the applicable statute of limitations (the "Statutory Period"), and who were nonexempt employees within the meaning of the FLSA (including both those who classified by Defendants as employees and those who are misclassified by Defendants as independent contractors but who are in fact employees) and who were not paid appropriate wages in violation of the FLSA (the "Collective Action Class").

The Collective Action Class does not include Defendants' directors, officers or members of their families. The Collective Action Class further excludes all persons whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to the provisions of § 204 of the Motor Carrier Act of 1935.

20. Section 216(b) of the FLSA provides that:

> Any employer who violates the provisions of section 6 or 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Any employer who violates the provisions of section 15(a)(3) of this Act shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3), including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages. An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees on behalf of himself or themselves and other employees similarly situated.

Plaintiffs are each a member of the FLSA Collective Action Class. Specifically, Plaintiffs and the Class were subject to Defendant's direction and control over the manner and means in which their work was performed.

21. Plaintiffs and the Collective Action Class were denied the benefits of their employment, including but not limited to:

      a.    Wages;

      b.    Overtime pay;

      c.    Holiday pay;

      d.    Waiting time pay;

      e.    Worker's compensation;

      f.    Unemployment insurance;

      g.    Income tax withholding;

      h.    Meal, break and rest periods; and

      i.    FICA contributions.

22. The practices of failing to pay wages and overtime complained of herein affect each member of the Collective Action Class. The members of the Collective Action Class are so numerous that joinder of all members is impracticable. The precise number of such persons is unknown, and the facts on which the calculation of that number can be precisely made are presently within the sole control of Defendants. Upon information and belief, the Class is so numerous that it is impracticable to join all members of the Class before the Court. The exact number of Class members is unknown to Plaintiffs, but is believed to consist of more than 350 members, past and present, full-time, Medicaid transportation drivers.

23. There exist no conflicts of interest as between the Plaintiffs and the other Collective Action Class members. The Plaintiffs have retained counsel that is competent and experienced. The Plaintiff and his counsel will fairly and adequately represent the interests of the Collective Action Class.

24. This collective action is superior to any other method for the fair and efficient adjudication of this dispute. The damages suffered by many members of the Collective Action

Class are small in relation to the expense and burden of individual litigation and therefore it is highly impractical for individual Collective Action Class members to attempt to vindicate their interests individually. There will be no extraordinary difficulty in the management of this collective action.

25.     The claims of Plaintiff are typical of the claims of the Collective Action Class, and a collective action is superior to other available methods for the fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in court against corporate defendants.

26.     Defendants have acted or refused to act on grounds generally applicable to the Collective Action Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Collective Action Class as a whole.

27.     All Collective Action Class members have been damaged in the same fashion, by the same conduct. The degree of damages suffered by individual Collective Action Class members is readily calculable according to an ascertainable formula. For these reasons, questions of law and fact will predominantly be common to the Collective Action Class. Among the questions of law and fact common to the Collective Action Class are:

    a.    whether Defendants failed and/or refused to pay the Collective Action Members both for hours worked and overtime compensation for hours worked in excess of forty hours per workweek, in violation of the FLSA and the regulations promulgated thereunder;

    b.    whether Defendants' violations of the FLSA are willful as that term is used within the context of the FLSA;

    c.    whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive and statutory damages, interest, costs and disbursements and attorneys' fees; and

  d.  whether Defendants should be enjoined from such violations of the FLSA in the future.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### VIOLATION OF FAIR LABOR STANDARDS ACT

28. Plaintiffs, on behalf of themselves and all Collective Action Members, reallege and hereby incorporate all of the preceding paragraphs of this Complaint as if fully set forth herein.

29. At all relevant times, Defendants each has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 203, 206(a) and 207(a). At all relevant times, Defendants employed, and/or continue to employ, Plaintiff and each of the Collective Action Members within the meaning of the FLSA. Upon information and belief, at all relevant times, Defendants each has had gross annual revenues in excess of $500,000.

30. Plaintiffs consent in writing to be parties to this action, pursuant to 29 U.S.C. § 216(b). Plaintiffs' written consent is attached hereto as Exhibit A and incorporated by reference.

31. At all relevant times, Defendants had a policy of mischaracterizing employees as independent contractors, and thereby not affording its employees the rights to overtime pay and other benefits mandated by the FSLA.

32. By way of example, Defendant required that their Medicaid drivers perform medical transportation services Monday through Saturday from 4:00 a.m. to 9:00 p.m. Defendant paid their Medicaid drivers pursuant to a one-way trip unit price. Defendant did not pay their drivers for times under control of Defendant when drivers were sent to pick up a Medicaid client, but the Medicaid client did not show. Defendant did not pay Medicaid drivers when the drivers are engaged to wait for the Medicaid client. Defendant did not pay drivers for

non-driving times even though they suffered and permitted drivers to work during such times. As a result, Defendant did not pay Plaintiffs the minimum wage required by federal law.

33. Section 6 of the FLSA, 29 U.S.C. § 206, requires the payment of minimum wages for all hours worked at $5.15 an hour prior to July 24, 2007, $5.85 an hour thereafter until July 24, 2008, $6.55 an hour thereafter until July 24, 2009, and $7.25 an hour thereafter, with no exceptions relevant herein.

34. By Defendant's actions above, Defendant willingly, knowingly, and/or recklessly violated the provisions of the FLSA which requires payment for all periods of time at work, despite whether a Medicaid client is available for pick up and compensation for meal periods interrupted by calls to duty and/or less than one-half hour.

35. As a further example, Defendant paid Medicaid drivers for each one-way trip a Medicaid client was in the vehicle. Defendant did not pay any premium pay for hours worked in excess of 40 hours per week.

36. Section 7(a)(1) of the Fair Labor Standards Act, 29 U.S.C. § 207(a)(1), states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." No exception or exemptions to the provisions of Section (a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), apply to Plaintiffs or other members of the Class of Medicaid drivers. Specifically, 29 U.S.C. §§ 213(b)(1) and (17) do not apply because Plaintiffs and members of the Medicaid transportation driver class: (1) are not employees with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant

to the provisions of Section 204 of the Motor Carrier Act, 1935 [49 USCS § 31502] and (2) are not drivers employed by an employer engaged in the [sole] business of operating taxicabs.

37. By Defendant's actions above, Defendant willingly, knowingly, and/or recklessly violated the provisions of the FLSA which requires overtime pay for hours worked in excess of 40 per week.

38. Defendant has not made a good faith effort to comply with the FLSA.

39. As a result of Defendants' willful failure to compensate its employees, including Plaintiff and the Collective Action members, at appropriate rates, as well as for actual hours worked, Defendants have violated and continue to violate the FLSA, 29 U.S.C. §§ 2-1 *et seq.*, including 29 U.S.C. §§ 207(a)(l) and 215(a).

40. As a result of Defendants' failure to record, report, credit and/or compensate its employees, including Plaintiff and the Collective Action members, Defendants have failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 211(c) and 215(a).

41. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning 29 U.S.C. § 255(a).

42. Due to Defendants' FLSA violations, Plaintiffs, on behalf of themselves and the Collective Action Class members, are entitled to recover from Defendants their unpaid hours worked and overtime compensation, an additional amount equal to one-hundred percent (100%) of their unpaid wages and overtime pay as liquidated damages, pre-and post judgment interest, reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

43. Therefore, Plaintiff demands payment of compensation at the appropriate minimum wage for all hours worked by themselves and all other similarly situated Medicaid transportation drivers employed by Defendant within the relevant statutory period, together with interest, liquidated damages, costs, and attorneys' fees as provided by statute.

## SECOND CAUSE OF ACTION
## RESCISSION OF SPECIAL MEDICAL
## TRANSPORTATION AGREEMENT AND RESTITUTION

44. Plaintiffs hereby incorporate all of the preceding paragraphs of this Complaint as if fully set forth herein.

45. Despite the express terms of the Special Medical Transportation Agreement, Plaintiffs relationship with Defendant satisfies every aspect of the test for employment, and not for independent contractor status.

46. Defendant controls virtually every aspect of the Plaintiffs' work and earnings, as set forth in the general allegations.

47. Despite this control and the actual status of the drivers as employees, Defendant mischaracterizes the Plaintiffs as independent contractors. As a result, these drivers paid and continue to pay substantial sums of their own money for work-related expenses, including but not limited to the purchase of lease of Defendant's vehicles, fuel charges, and cellular phone charges.

48. The Special Medical Transportation Agreement illegally and unfairly advantages Defendant by mischaracterizing the status of the Plaintiffs in that Defendant's employment related obligations, such as overtime, social security contributions, workers' compensation coverage, and unemployment compensation, are expenses illegally shifted to Plaintiffs.

49. The Special Medical Transportation Agreement between Defendant and each Plaintiff and member of the Class is void as against public policy and therefore unenforceable, as failing to recognize the employment status of the Plaintiffs and the Class members, and therefore denying them the legal benefits of employment.

50. The Agreement between Defendants and its drivers is and has at all relevant times been a contract of adhesion, drafted exclusively by Defendant and/or its legal counsel, with no negotiation with Plaintiffs and Plaintiff Class members, who are required to sign the Agreement as a condition of employment. Plaintiffs and Plaintiff Class members are required to sign the form contract as is, without any changes made to the terms contained therein. The Agreement is, and at all material times has been unlawful, unconscionable and fraudulent in form and effect, which is unenforceable as a contract against public interest, policy and law.

51. The Special Medical Transportation Agreement illegally shifts the burden of certain costs that an employer must pay.

52. Plaintiffs and Class members, while acting on direct instruction from Defendant that allows Defendant to discharge their duties, Plaintiffs and Class members incurred expenses for the purchase or lease of Defendant's vehicles, operating costs, and cellular phone expenses. Plaintiffs and the Class members incurred these substantial expenses as a direct result of performing their job duties.

53. By misclassifying Plaintiffs and Class members as "independent contractors," and further by contractually requiring those employees to pay Defendant's own expenses, Irving Holdings, Inc. has been unjustly enriched.

54. As a direct and proximate result of Defendant's conduct, Defendant has received substantial benefits to which it had no entitlement, at Plaintiffs and the Class members' expense.

55. Plaintiffs are entitled to compensation for all of the expenses they were illegally required by Defendant to bear, for all of the employment taxes, unemployment compensation and workers compensation the Defendant should have but did not pay, and Plaintiffs are entitled to the value of their services as employees.

### THIRD CAUSE OF ACTION
### IMPROPER WAGE DEDUCTIONS

56. Plaintiffs hereby incorporate all of the preceding paragraphs of this Complaint as if fully set forth herein.

57. Tex. Lab. Code § 61.018 states, "An employer may not withhold or divert any part of an employee's wages unless the employer: (1) is ordered to do so by a court of competent jurisdiction; (2) is authorized to so by state or federal law; or (3) has written authorization from the employee to deduct part of the wages for a lawful purpose.

58. Defendant required its Medicaid drivers to lease or purchase a vehicle from Defendant in order to perform the essential functions of the Medicaid transportation driver's job and deducted a "leasing fee" from Plaintiffs and each Class member's wages.

59. Defendant further set forth policies within their organization that imposed financial penalties upon their Medicaid drivers that were deducted from their wages.

60. Pursuant to Tex. Lab. Code § 61.018, Plaintiffs seek restitution to themselves and all class members of all unlawful wage deductions to be determined at the trial of this matter.

61. As exemplified by Tex. Lab. Code § 62.201, the legislature of the State of Texas has affirmatively created a private cause of action for an employee to sue in court for wages claimed to be due. A claim for ***wages*** improperly rebated is a claim for non-payment of wages due for which there is a private cause of action under Texas statutory law. Plaintiffs bring this cause of action for any rebate which caused the employee to make less than the minimum wage

and/or proper overtime rate (if applicable) in the week any deduction from wages was taken by the employer improperly.

## FOURTH CAUSE OF ACTION
## RETALIATION AND REINSTATEMENT

62. This lawsuit was filed on January 27, 2010, and served on January 28, 2010. Within hours of being served, Defendant, without just cause or permissible basis, terminated Plaintiff Lowrance from her position, and confiscated her vehicle. As a result, Plaintiff Lowrance is unable to work as a Medicaid transport driver for Defendant.

63. Retaliatory firings are expressly prohibited by 29 U.S.C. § 215(a)(3):

> (a)  [I]t shall be unlawful for any person --
> (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . .

Plaintiff Lowrance was terminated for a retaliatory purpose in direct violation of section 215(a)(3). She is entitled to recover damages, and hereby seeks to recover, wages lost as a result of the retaliatory termination, and an additional equal amount as liquidated damages. In addition, Plaintiff Lowrance seeks equitable relief, including reinstatement.

## JURY DEMAND

64. Plaintiffs hereby demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Collective Action Class, respectfully pray for the following relief:

a. Designation of this action as a collective action on behalf of the members of the Collective Action Class, appointing Plaintiff and their counsel to represent the Collective Action Class and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b. A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

c. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d. An award of unpaid wages and overtime compensation due under the FLSA against Defendant;

e. An award of liquidated and/or punitive damages against Defendants as a result of Defendant's willful failure to pay overtime compensation pursuant to 29 U.S.C. § 216;

f. An award of pre-judgment and post-judgment interest;

g. Restitution of all unlawful wage reductions;

h. Restitution of all expenses that were unlawfully passed from the Defendant to the Plaintiffs and the Class;

i. Reinstatement of Plaintiff Lowrance to her pre-firing position;

j. Wages lost by Plaintiff Lowrance during the time she was wrongfully terminated, plus an

k. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l. Such other and further legal and equitable relief as this Court deems just and proper.

Respectfully submitted,

By:   /s/ JOEL M. FINEBERG
      Joel M. Fineberg
      Texas Bar No. 07008520
      R. Dean Gresham
      Texas Bar No. 24027215
      Jennifer Weber Johnson
      Texas Bar No. 24060029

        FINEBERG GRESHAM
        3811 Turtle Creek Boulevard, Suite 1900
        Dallas, Texas 75219
        Telephone: (214) 219-8828
        Fax: (214) 219-8838
        jfineberg@fineberglaw.com
        dgresham@fineberglaw.com
        jjohnson@fineberglaw.com

        Richard Norman
        Texas Bar No. 00788128
        CROWLEY NORMAN LLP
        Three Riverway, Suite 1775
        Houston, TX 77056
        Telephone: (713) 651-1771
        Fax: (713) 651-1775
        rnorman@crowleynorman.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 4, 2010, I electronically filed the foregoing FIRST AMENDED COMPLAINT AND COLLECTIVE ACTION COMPLAINT with the Clerk of the Court using the CM/ECF system and I hereby certify that I have served the foregoing document or paper via hand delivery, as no counsel has appeared in this matter on behalf of Defendant, to:

        Mr. Jack Bewey
        Registered Agent
        Irving Holdings, Inc.
        2515 Irving Blvd.
        Dallas, TX 75207

This the 4th day of February, 2010.

        Respectfully submitted,

        By: /s/ JOEL M. FINEBERG
            Joel M. Fineberg
            Texas Bar No. 07008520