# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ROBERT L. SPENCE; PATSY A. WARREN; BRENDA J. LOWRANCE; RICHARD D. DEVANEY; individually and on behalf of all other persons similarly situated, | § § § § § | |
| Plaintiffs, | § § | CASE NO.: 3:10-cv-0142-F |
| vs. | § § | |
| IRVING HOLDINGS, INC., | § § | |
| Defendant. | § § | |

**MEMORANDUM OF LAW IN SUPPORT OF OPT-IN PLAINTIFF KENNETH CRAWFORD'S MOTION FOR TEMPORARY RESTRAINING ORDER, MOTION FOR PRELIMINARY INJUNCTION, AND REQUEST FOR A HEARING PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 65(A)**

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  BACKGROUND FACTS ............................................................................... 2, 3

III. ARGUMENT AND LEGAL AUTHORITIES ..................................................... 4

    A.   There Is A Substantial Likelihood that the Plaintiff Will Prevail
        On the Merits Of His Claim ............................................................... 5, 6

        1.   Protected Activity ....................................................................... 6

        2.   Adverse Employment Action ....................................................... 7

        3.   Causal Connection Between the Protected Activity and
            Adverse Action ........................................................................... 7

    B.   There Is A Substantial Threat That The Plaintiff Will Suffer
        Irreparable Injury If The Injunction Is Not Granted .......................... 7, 8, 9, 10, 11

    C.   The Injuries To The Plaintiff That Will Occur If Injunctive
        Relief Is Denied Outweigh The Harm To The Defendants ................... 11

    D.   If Issued, The Injunctive Relief Requested Will Not Be
        Adverse To The Public Interest ......................................................... 11, 12

    E.   The Court Should Not Require Any Security Before Issuing
        This Injunction ................................................................................ 12

IV.  CONCLUSION ................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Bailey v. Gulf Coast Transp., Inc.*,
  280 F.3d 1333, 1337 (11th Cir. 2002) ......................................................................... 4

*Baker v. Buckeye Cellulose Corp.*,
  856 F.2d 167, 169 (11th Cir. 1988) ........................................................................... 11

*Brock v. Casey Truck Sales, Inc.*,
  839 F.2d 872 (2nd Cir. 1988) ............................................................................. 10, 11

*Canal Authority of the State of Florida v. Callaway*,
  489 F.2d 567, 573 (5th Cir. 1974) ............................................................................ 10

*EEOC v. Chrysler Corp.*,
  733 F.2d 1183, 1186 (6th Cir. 1984) ........................................................................ 11

*Garcia v. Lawn*,
  805 F.2d 1400, 1405 (9th Cir. 1986) .......................................................................... 9

*Goldberg v. Bama Manufacturing Corp.*,
  302 F.2d 152, 156 (5th Cir. 1962) .............................................................................. 8

*Hoffman-La Roche v. Sperling*,
  493 U.S. 165, 170 (1989) ........................................................................................... 8

*Holt v. The Continental Group, Inc.*,
  708 F.2d 87 (2nd Cir. 1983), *cert. denied*, 465 U.S. 1030 (1984) ............................. 9

*James v. MedicalControl, Inc.*,
  29 F. Supp. 2d 749, 752 (N.D. Tex. 1998) ........................................................... 4, 5, 6

*Jeffreys v. My Friend's Place, Inc.*,
  719 F. Supp. 639, 646-47 (M.D. Tenn. 1989) ........................................................... 10

*Karaha Bodas Co. v. Negara*,
  335 F.3d 357, 363 (5th Cir.2003) ............................................................................... 5

*Khan v. Fort Bend Indep. Sch. Dist.*,
  561 F. Supp. 2d 760, 763 (S.D. Tex. 2008) ................................................................ 5

*Lafferty v. Carter*,
  310 F. Supp. 465, 468 (W.D. Wisc. 1970) .................................................................. 9

*Martinez v. Bohls Bearing Equipment Co.*,
  361 F. Supp. 2d 608, 617 (W.D. Tex. 2005) ............................................................ 4, 6

*Mitchell v. Robert DeMario Jewelry, Inc.*,
  361 U.S. 288, 292 (1960) ................................................................................ 4, 6, 8, 9

*OTR Drivers at Topeka Frito-Lay, Inc's Distribution Ctr. v. Frito-Lay, Inc.*,
  1991 WL 49758 (D. Kan. 1991) ............................................................................ 9, 10

*Sapperstein v. Hager*,
  188 F.3d 852, 854 (7th Cir. 1999) .............................................................................. 6

**Statutes**

29 U.S.C. § 215(a)(3)......................................................................................... 1, 5, 8, 11

29 U.S.C. § 216(b) ............................................................................................... 4, 8, 10

**Other Authorities**

B. Schlei & P. Grossman, Employment Discrimination Law, Second Edition, at 1063 ............... 9

Wright & Miller, FED. PRACTICE & PROCEDURE, section 2947.................................................... 10

**Rules**

Federal Rules of Civil Procedure 65(a) .................................................................... 1, 10

Opt-In Plaintiff Kenneth Crawford ("Plaintiff") hereby respectfully submits this Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction and Request for a Hearing pursuant to Federal Rule of Civil Procedure 65(a).

## I. <u>INTRODUCTION</u>

Opt-in Plaintiff Kenneth Crawford filed his "Consent" to join this action on March 24, 2010. (Docket No. 16).  Within two days of service of that consent on Defendant Irving Holdings, Inc. ("Defendant"), Defendant refused to provide Plaintiff Crawford a driving route; that daily route was the source of Plaintiff Crawford's income.  Subsequent requests for routes have been similarly refused.  This course of conduct is not new to Defendant.  Within hours of the original plaintiffs serving the Original Petition alleging violations of the Fair Labor Standards Act (FLSA), Defendant fired the only original named Plaintiff, Brenda Lowrance, who still worked for Defendant.[1]  That matter was the subject of a previously filed, and resolved[2], motion for preliminary injunction.  (Docket Nos. 7, 8, and 22).

Defendant's retaliatory firing of Plaintiff Crawford violates federal law, and is properly subject to injunctive relief pursuant to the FLSA.  Plaintiffs are seeking leave to file a Second Amended Complaint setting forth a claim for retaliatory discharge (29 U.S.C. § 215(a)(3)), which is filed contemporaneously with this memorandum and the Plaintiff's Motion for Temporary Restraining Order and Motion for Preliminary Injunction.  Plaintiff Crawford seeks an order (1) reinstating Plaintiff to his prior position, and (2) enjoining Defendant from taking any further retaliatory actions against Plaintiff.

---

[1] The other Plaintiffs had previously severed their employment relationship with Defendant.

[2] Defendant now refuses to comply with the agreement reached to resolve the prior matter.

Because Defendant has demonstrated its willingness to violate federal anti-retaliation laws, and because Plaintiff has established the requirements for obtaining a Temporary Restraining Order and Preliminary Injunction, Plaintiff's motion should be granted.

## II. <u>BACKGROUND FACTS</u>

Plaintiff worked as a Medicaid transportation driver for Defendant. Exhibit A, Affidavit of Crawford. Plaintiff consented to join a proposed collective action alleging violations of the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 206, 215, 216) against Defendant, seeking to recover unpaid minimum wage and overtime wage compensation. *Id.* By joining the action, Plaintiff alleges that Defendant engaged in a scheme designed to bypass the FLSA's minimum and overtime wage requirements by improperly designating Plaintiff, who was a Medicaid transportation driver, as an "independent contractor" rather than properly designating him as an employee.

On March 24, 2010, the other Named Plaintiffs gave Notice of Filing Additional Consents. (Docket No. 16). The Opt-in Consent Form of Mr. Kenneth Crawford was contained in that filing. (Docket No. 16-2). On that date, Mr. Crawford was working as a Medicaid transportation driver with Defendant Irving Holdings, and had performed his job for approximately six (6) years. Exhibit A, Declaration of Kenneth Crawford, attached to Plaintiff's Motion.

When Mr. Crawford called in to Defendant to obtain his schedule, Ms. Beth Stevenson, an employee of Defendant, informed Mr. Crawford that Defendant's President, Jack Bewley, told her not to give him [Mr. Crawford] a schedule. *Id.*

The Defendant has summarily terminated an Opt-in Plaintiff (the only Opt-in Plaintiff who was still employed by Defendant). This type of retaliatory conduct is expressly prohibited

by federal law.  29 U.S.C. § 215(a)(3).  If left unrestrained, Opt-in Plaintiff Crawford will be punished for exercising his federally protected rights, and Defendant's conduct will undoubtedly have a chilling effect on the willingness of other Medicaid transportation drivers (the putative plaintiffs) from joining in this action.

But this action is merely a reprise of what transpired at the start of this case.  On January 27, 2010, Plaintiffs filed their Original Complaint (Docket No. 1).  Citation, including a copy of the original Complaint naming the Plaintiffs, was served on Defendant at 2:45 p.m. on January 28, 2010 (Docket No. 5).  During the afternoon of January 28, 2010, Cheryl Jones, the daughter of Plaintiff Patsy Warren and a close friend of Plaintiff Brenda Lowrance, was summarily terminated and escorted from Defendant's Fort Worth offices (Plaintiffs' Appendix ("App."), P. App. 0002, previously submitted as Attachment 1 to Docket No. 8).  Defendant would not even allow her back into the building to retrieve her diabetes medication and she was forced to call the Fort Worth Police Department to assist her in that effort (App., P. App.0003).

Hours later, Defendant's Operations Manager, Michael Rice, called Plaintiff Brenda Lowrance at home (App., P. App. 0006).  Plaintiff Lowrance had just returned home from working a full shift for Defendant as a Medicaid transport driver.  Mr. Rice informed Plaintiff that Defendant was confiscating her car (which was a taxi owned by Defendant but paid for by Plaintiff Lowrance).  Plaintiff Lowrance tried to get him to explain why, and he stated, "you would know more about it than I do" (App., P. App. 0006).  She then asked if she was being fired, and Mr. Rice replied, "If that is what you want to call it" (App., P. App. 0006).  A tow truck arrived a short time later and towed the vehicle away (App., P. App. 0007).  Plaintiff Lowrance's prior Motion for Temporary Injunction was resolved by agreement (although Defendant now refuses to comply with that agreement) and withdrawn.  (Docket No. 22).

### III.  ARGUMENT AND LEGAL AUTHORITY

The Fair Labor Standards Act (FLSA) prohibits retaliation against any person who files a complaint under the FLSA.[3]  "The primary purpose of the anti-retaliation provision is to ensure that fear of retaliation does not 'operate to induce aggrieved employees quietly to accept substandard conditions.'"[4]  Injunctions are expressly permitted to remedy retaliation:

> For violations of the anti-retaliation provision, however, the FLSA specifically provides for equitable relief in an employee suit. 29 U.S.C. § 216(b). Section 216(b) provides that an employer who violates the FLSA's anti-retaliation provision "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of" the anti-retaliation provision and provides a private right of action to employees to seek ther relief. *Id.*[5]

Plaintiff is entitled to the issuance of a Temporary Restraining Order and issuance of a Preliminary Injunction.

#### TEMPORARY RESTRAINING ORDER

Plaintiff will suffer immediate and irreparable injury if Defendant is not immediately restrained from the retaliatory discharge of Plaintiff, and restrained from refusing to provide Plaintiff Medicaid transportation routes, for which plaintiff has no adequate remedy at law.  The basis for such assertion is set forth in the discussion of the elements of the Preliminary Injunction set forth below.

Plaintiff is willing to post a bond in the amount the court deems appropriate.  However, as Plaintiff is simply asking for the status quo to be restored and for the federal law to be followed, Plaintiff believes that any bond amount should be *de minimis*.

---

[3] 29 U.S.C. § 215(a)( 3); *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d 608, 617 (W.D. Tex. 2005); *James v. MedicalControl, Inc.*, 29 F. Supp. 2d 749, 752 (N.D. Tex. 1998).
[4] *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002) (citing *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)).
[5] *Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002).

For these reasons and those set forth below, Plaintiff asks the court to issue a temporary restraining order.

**PRELIMINARY INJUNCTION**

In the Fifth Circuit, a party seeking a preliminary injunction must establish the following elements by a preponderance of the evidence: (1) there is a substantial likelihood the party will prevail on the merits; (2) a substantial threat exists that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendants, and (4) the granting of the preliminary injunction will not disserve the public interest.[6]   Plaintiff's motion is well supported by his affidavit regarding facts that cannot be disputed.

**A.    There Is A Substantial Likelihood That Plaintiff Crawford
Will Prevail On The Merits Of Their Claim**

There is a substantial likelihood that Plaintiff Crawford will prevail on his claim for retaliation under 29 U.S.C. § 215(a)(3).

To prove his retaliation claim, Plaintiff Crawford must prove the same elements that are required under Title VII's three-step *McDonnell Douglas* test, which is designed to determine the employer's motive behind the adverse employment decision.[7]   The first step is for the plaintiff to establish a *prima facie* case of retaliation.[8]   To establish a prima facie case of retaliation under the FLSA, a plaintiff must show that (1) he engaged in a protected activity under the FLSA; (2) he was subjected to an adverse employment action; and (3) there was a causal connection

---

[6] *Karaha Bodas Co. v. Negara,* 335 F.3d 357, 363 (5th Cir.2003); *see also Khan v. Fort Bend Indep. Sch. Dist.,* 561 F. Supp. 2d 760, 763 (S.D. Tex. 2008).
[7] *James*, 29 F. Supp. 2d at 752.
[8] *Id.*

between the activity and the adverse action.[9]  Once plaintiff has made his case, the burden is on

the defendant to demonstrate a legitimate, non-discriminatory basis for the termination.[10]  If

defendant succeeds, then the plaintiff is given the opportunity to establish that the defendant's

proffered basis is merely a pretext.[11]

1.    **Protected Activity**

The purpose of the anti-retaliation provisions of the FLSA is to allow employees to

secure their legal rights without fear of economic injury.[12]  A person is protected by the

retaliation provision of the FLSA if he or she had a good faith basis to complain about an

employer's conduct that he or she believed to be unlawful.[13]  Even if the conduct of which the

plaintiffs complained is not actually proven to be unlawful, as long as the plaintiffs had a

reasonable and good faith belief that the policies were in violation of the statute, then that person

engaged in protected activity that is covered by the retaliation provision.[14]

Here, the four named Plaintiffs, including Plaintiff Lowrance, filed a civil lawsuit

complaining primarily that they were employees and not independent contractors, and therefore

entitled to minimum and overtime wages under the FLSA (Docket No. 1).  Plaintiffs have a

compelling basis for believing they are employees entitled to minimum and overtime wages

under the FLSA, as set forth in the Complaint (Docket No. 1).

---

[9] *Martinez v. Bohls Bearing Equipment Co.*, 361 F. Supp. 2d at 617; *James,* 29 F. Supp. 2d at 752.

[10] *James*, 29 F. Supp. 2d at 752.

[11] *Id.*

[12] *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960).

[13] *See Sapperstein v. Hager*, 188 F.3d 852, 854 (7th Cir. 1999); *Brennan v. Maxey's Yamaha, Inc.,* 513 F.2d 179, 181 (8th Cir. 1975).

[14] *See id.*

2.    **Adverse Employment Action**

In the present matter, Plaintiff Crawford consented to join an ongoing FLSA lawsuit making allegations that Defendant violated the FLSA, 29 U.S.C. § 215(a)(3) (Docket No. 1). Within days of service of his consent form, Defendant refused to provide Plaintiff Crawford the daily Medicaid transportation routes that he had been provided over the last approximately six (6) years. Exhibit A. Absolutely no explanation was provided for why the president of the company would be taking a direct interest in ensuring that a particular driver -- who just happened to have consented to join this FLSA lawsuit -- would be barred from earning a living.

3.    **Causal Connection Between the Protected Activity and the Adverse Action**

Defendant terminated Plaintiff Crawford within days of learning that he consented to join this FLSA lawsuit. Defendant made no effort to assert any legitimate basis for the termination, nor even offer up a feeble pretext for the termination. And what Plaintiff does know is that he has done nothing that would be the basis for a legitimate, lawful, non-retaliatory termination (Exhibit A). The only remaining possible ground for the adverse action was his temerity to file suit against Defendant. The causal connection is clear and irrefutable, particularly when coupled with the fact that this is exactly how Defendant has treated the other Plaintiff -- Lowrance-- who was still employed when she brought suit. Defendant is still intent on "cleaning out" the trouble-makers who participate in this lawsuit; Plaintiff Crawford is simply the latest to be swept out the door.

B.    **There Is A Substantial Threat That The Plaintiffs Will Suffer Irreparable Injury If The Injunction Is Not Granted**

In this case, irreparable injury will occur if prompt injunctive relief is not granted because (1) the Defendant's retaliatory actions are chilling the Plaintiffs' right to litigate his case as a

collective action under 29 U.S.C. § 216(b); and (2) because the Plaintiffs are unlikely to obtain other employment as Medicaid transportation drivers.

In *Hoffman-La Roche v. Sperling*, the Supreme Court made it clear that there are important benefits to the plaintiffs and the court system in allowing appropriate FLSA cases to be litigated as collective actions.[15]   These benefits include allowing the plaintiffs to pool their resources and providing the judicial system with an "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity."[16]   In enacting the FLSA, Congress relied on "employees seeking to vindicate rights claimed to have been denied" to enforce the statute.[17]   "Effective enforcement could thus only be expected if employees felt free to approach officials with their grievances."[18]   "Fear of economic retaliation might often operate to induce aggrieved employees to accept substandard conditions."[19]

In this case, in retaliation for filing the lawsuit, Defendant fired the only Plaintiff who was still employed by it at the time the case was filed, and then fired the only Opt-in Plaintiff who was still employed by Defendant.  If Plaintiff Crawford is not reinstated,[20] such economic retaliation will chill other Medicaid transportation drivers from consenting to join the collective action. Potential opt-in plaintiffs will be faced with the "Hobson's choice" of certain termination in exchange for having to wait an indeterminate period to obtain reinstatement and monetary

---

[15] *Hoffman-La Roche v. Sperling,* 493 U.S. 165, 170 (1989).
[16] *Id*.
[17] *Mitchell*, 361 U.S. at 292.
[18] *Id*.
[19] *Id.*
[20] "Generally, in order to carry out the purposes of Section 215(a)(3) by freeing employees of the fear of economic retaliation, the discharged employee should be restored, as nearly as possible, to the same situation he would have occupied if he had not been discharged." *Goldberg v. Bama Manufacturing Corp.*, 302 F.2d 152, 156 (5th Cir. 1962).

relief.[21]    The chilling effect that retaliation will have on others has been held to be sufficient to show irreparable harm in the Title VII context.[22]    As stated by a leading Title VII treatise, "the courts will more readily grant [preliminary injunctive] relief where allegations of retaliation are involved, because such conduct is likely to cause irreparable harm to the public interest in enforcing the law by deterring others from filing charges."[23]    The Defendant's retaliatory conduct will continue to have a "chilling effect" on potential opt-in class members.

> A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act ….These risks may be found to constitute irreparable injury.[24]

Irreparable injury does not necessarily have to be monetary to justify reinstatement or an injunction against retaliatory termination.[25]    In *OTR Drivers at Topeka Frito-Lay, Inc's Distribution Ctr. v. Frito-Lay, Inc.*,[26] the employees filed a lawsuit against Frito-Lay for violating the wage and hour provisions of the FLSA.    The court found that employees who had opted into the lawsuit had been subjected to "unlawful discipline, which could result in their termination."[27]    The court further held that as a result of the defendant's conduct, the plaintiffs

---

[21] *See Mitchell*, 316 U.S. at 293.

[22] *See Garcia v. Lawn,* 805 F.2d 1400, 1405 (9th Cir. 1986); *see also Holt v. The Continental Group, Inc.*, 708 F.2d 87 (2nd Cir. 1983), *cert. denied*, 465 U.S. 1030 (1984).

[23] B. Schlei & P. Grossman, Employment Discrimination Law, Second Edition, at 1063.

[24] *See Holt v. The Continental Group, Inc.,* 708 F.2d 87, 90 (2nd Cir. 1994); *see also Garcia v. Lawn*, 805 F.2d 1400, 1405 (9th Cir. 1986) (chilling effect of retaliation may constitute irreparable harm).

[25] *See Lafferty v. Carter,* 310 F. Supp. 465, 468 (W.D. Wisc. 1970) (finding that suspending professors with pay and prohibiting them from using the school's facilities constituted irreparable harm).

[26] *OTR Drivers at Topeka Frito-Lay, Inc's Distribution Ctr. v. Frito-Lay, Inc.*, 1991 WL 49758 (D. Kan. 1991).

[27] *Id.*

suffered irreparable harm and were entitled to a temporary restraining order prohibiting the defendant from threatening, harassing, or intimidating the plaintiffs.[28]

The Court must act swiftly to stop the Defendant from taking such retaliatory actions or the proposed collective action will be rendered futile.[29]  Court inaction in the face of the overwhelming evidence of retaliation in the case would effectively end the collective action litigation under 29 U.S.C. § 216(b), as other drivers would refuse to join in the suit for fear of facing the same fate as Plaintiff Lowrance.  Especially since Defendant controls the Medicaid transportation schedules given to the drivers, and it has cut Plaintiff Crawford off from receiving work.  Plaintiff Crawford will not be able to obtain work as a Medicaid transportation driver. While generally economic loss does not constitute irreparable injury, the limited availability of Medicaid transportation schedules support reinstatement and prophylactic relief in this case.[30] Moreover, although an award of compensation may partially compensate the plaintiffs who are terminated and continue participating in the action, it will not compensate those plaintiffs who are threatened, harassed and intimidated into dropping their claim.  Nor will it adequately compensate those who are so afraid they elect not to defend their rights.  In effect, if the Defendant is not immediately enjoined, it will have "gained the advantage of the fearful silence of the remaining employees."[31]

---

[28] *Id.*

[29] *See* Wright & Miller, Fᴇᴅ. Pʀᴀᴄᴛɪᴄᴇ & Pʀᴏᴄᴇᴅᴜʀᴇ, section 2947("the most compelling reason in favor of entering a Rule 65(a) order is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act."); *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974).

[30] In addition, the plaintiffs' legal remedy may be speculative because the Medicaid transportation drivers are currently compensated by each leg of a trip provided and makes it difficult to establish damages due for the period the driver is unemployed. *See generally Jeffreys v. My Friend's Place, Inc.*, 719 F. Supp. 639, 646-47 (M.D. Tenn. 1989).

[31] *Brock v. Casey Truck Sales, Inc.*, 839 F.2d 872 (2nd Cir. 1988).

This silence, until broken by a judgment against the employer, provides the employer an opportunity for continued wrongdoing and strikes at the core of the complaint-based enforcement mechanism contemplated by the FLSA.[32]

The blatant disregard for the protections afforded litigants under 29 U.S.C. § 215(a)(3) also supports a finding of irreparable harm, as the termination that was imposed here by Defendant is exactly the type of injury that "Congress sought to avert."[33]   In fact, in a related context, the Eleventh Circuit has stated that irreparable injury should be presumed.[34]

**C.     The Injuries To The Plaintiffs That Will Occur If
Injunctive Relief Is Denied Outweigh The Harm To The Defendants**

As set forth in Section III. B, *supra*, the chilling effect that the Defendant's retaliatory actions have already had on the litigation and the injury to Plaintiff Crawford who has lost his job and his means of making a living, far outweigh any speculative harm that would occur if this Court grants reinstatement and preventative injunctive relief.  In terminating Plaintiff from his position, the Defendant did not assert that Plaintiff Crawford caused any disruption in the workforce, violated any safety laws, or did anything inappropriate other than assert his rights under the FLSA.  Plaintiff Crawford merely requests that he be reinstated and that this court enjoin the Defendant from taking any further retaliatory actions against him.  Defendant itself should benefit from this request, in that the Plaintiff is an experienced and capable Medicaid transportation driver.

**D.     If Issued, The Injunctive Relief Requested Will
Not Be Adverse To The Public Interest**

The injunctive relief requested in this case is necessary to repair the damage caused by Defendant's blatant disregard for the protections afforded litigants in an FLSA action.  The

---

[32] *Id.* at 880.
[33] *See EEOC v. Chrysler Corp.*, 733 F.2d 1183, 1186 (6th  Cir. 1984).
[34] *See Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988).

public interest will clearly be served if the Court grants Plaintiffs' request to maintain the status quo that existed when the suit was filed, and allows the case to proceed to trial without the Defendant unfairly chilling the participation in this action.

**E.    The Court Should Not Require Any Security<br>Before Issuing The Injunction**

Pursuant to Federal Rule of Civil Procedure 65(c), the Court must determine the appropriate amount of security that must be posted for the payment of such costs and damages that may be incurred if the Court enjoins the Defendant's actions.  While Plaintiffs are willing to post bond, the Plaintiffs respectfully request that no security be required here because the proposed injunction merely restores the status quo as of the date of filing the complaint and because the Defendant should not suffer any harm from the injunction.  See Section III. D, *supra*. Further, given that the actions taken were in clear violation of federal law, Plaintiff should not have to bear a heavy financial burden solely to remedy Defendant's misconduct.

**IV.  CONCLUSION**

Opt-in Plaintiff Kenneth Crawford has met each element necessary to obtain a preliminary injunction. Accordingly, the Court should grant Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction and enter Plaintiff's proposed Order.

Filed this the 1st day of April, 2010.

Respectfully submitted,

By:_____/s/ JOEL M. FINEBERG_____
Joel M. Fineberg
Texas Bar No. 07008520
JOEL M. FINEBERG, P.C.
3811 Turtle Creek Boulevard, Suite 1900
Dallas, Texas  75219

Telephone:  (214) 219-8828
Fax:  (214) 219-8838
jfineberg@fineberglaw.com

Richard Norman
Texas Bar No. 00788128
CROWLEY NORMAN LLP
Three Riverway, Suite 1775
Houston, TX 77056
Telephone:  (713) 651-1771
Fax:  (713) 651-1775
rnorman@crowleynorman.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2010, I electronically filed the foregoing document with the Clerk of the United States District Court, Northern District of Texas, Dallas Division, using the electronic case filing system of the Court.  As such, this pleading was served on all counsel, who has consented to electronic service.

By:      /s/ JOEL M. FINEBERG_____
Joel M. Fineberg, TBN 07008520